IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| MATTHEW HEIMANN, individually and on behalf of the citizens and taxpayers of Stanton County, Nebraska;<br><br>Plaintiff,<br><br>vs.<br><br>MIKE UNGER, individually and in his official capacity as Sheriff of Stanton County, Nebraska; AARON KLEENSANG, individually and in his official capacity as Chief Deputy, Stanton County Sheriffs Office; and  STANTON COUNTY, NEBRASKA, a political subdivision;<br><br>Defendants. | **4:26CV3117**<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's motion for a preliminary injunction.  (Filing No. 3.)  Plaintiff's motion will be denied.

## BACKGROUND

On April 7, 2026, Matthew Heimann ("Plaintiff") filed suit against Defendants, asserting various causes of action, including a 18 U.S.C. § 1983 First Amendment retaliation claim, Fourteenth Amendment due process claim, and state law causes of action for conversion and illegal expenditure of public funds.  (Filing No. 1.)  Plaintiff is a resident of Stanton County, Nebraska, where he operates a farming operation.  (Filing No. 1.)  Defendant Mike Unger ("Unger") is the Sheriff of Stanton County, Nebraska.  (Filing No. 1.)  Defendant Aaron Kleensang ("Kleensang") is the Chief Deputy of the Stanton County Sheriff's Office.  (Filing No. 1.)

Kleensang is seeking election as Unger's successor as county sheriff.  Among other things, Plaintiff's Complaint alleges that Kleensang and Unger have used county resources including "uniforms, badges, office space, letterhead, press release infrastructure, and compensated work hours to conduct a coordinated political campaign" to get Kleensang elected as sheriff to further a "corrupt arrangement to appoint Unger as a deputy sheriff so that he may simultaneously draw a pension and a salary." (Filing No. 1.)  According to the Complaint, part of this "arrangement"

involves a pattern of intimidation and retaliation against taxpayers who publicly oppose Kleensang's election as sheriff. The Complaint asserts that this alleged pattern includes an incident in which the Stanton County Sheriff's Office issued a press release regarding the DWI arrest of Marissa Piekkola. The press release included a statement from Unger that said:

> Just today a Stanton citizen told one of my deputies we need to get off the highways and the drugs on Hwy 275 are just passing through and not our problem. He further stated we should just go to games and events where we are seen. Well Mr. Citizen, I hope none of your three children are ever hit by a drunk or drug impaired driver. In Stanton County we will continue to do our sworn job as long as I'm the Sheriff.

(Filing No. 1; Filing No. 3-2.) Plaintiff claims this statement was directed toward another citizen (referred to by Plaintiff as the "Farmer") who told Kleensang he did not intend to vote for him for sheriff. (Filing No. 1.) The Complaint also describes an alleged retaliatory incident from February 2022 in which Unger supposedly used a deceased individual's phone to place an anonymous call to Arthur Reed's employer ("Reed") (a citizen who had publicly opposed his election) and reported to the employer that Reed's work vehicle was parked outside a local bar. (Filing No. 1.)

Plaintiff's Complaint seeks, in part, injunctive relief. Plaintiff claims he needs an injunction because he wants to publicly oppose Kleensang's candidacy for sheriff, post his views on social media, speak at Republican Party forums and town halls, contact the Stanton County Board of Supervisors about Unger's misconduct, and encourage other citizens to demand accountability from county officials. (Filing No. 1.) Plaintiff maintains that he has refrained from doing these things "because of the demonstrated pattern of retaliation." (Filing No. 1.)

On April 9, 2026, Plaintiff filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction. (Filing No. 3.) The Court denied Plaintiff's request for a TRO and held Plaintiff's request for a preliminary injunction in abeyance pending Defendants' notification of the motion. (Filing No. 6.) Defendants responded to Plaintiff's motion for a preliminary injunction, and oppose the relief sought. After review of the submissions, the Court ordered the parties to provide supplemental evidentiary materials to the Court regarding the request for a preliminary injunction. The Court advised the parties that upon review of the materials, it would decide whether a hearing on the motion was necessary.

2

Materials have been submitted as ordered, and the Court has reviewed them. Based on what was submitted, the Court finds a hearing is not necessary to decide the preliminary injunction request. *See Hanes v. Frakes*, No. 8:22CV156, 2022 WL 2974762, at *1 (D. Neb. July 27, 2022) ("Federal Rule of Civil Procedure 65 does not require a hearing to be held when the court denies a motion for preliminary injunction") (quotation omitted).

## DISCUSSION

Plaintiff's request for injunctive relief focuses on the upcoming election for sheriff and Defendants' alleged use of public resources to support Kleensang's candidacy. Plaintiff seeks an injunction (1) prohibiting Defendants from using Stanton County Sheriff's Office press releases, letterhead, social media accounts, or other official communications infrastructure, or personal phones, devices, or accounts used in connection with official authority, to target, identify, rebuke, or retaliate against any citizen for expressing a political opinion; (2) prohibiting Defendants from using official authority, resources, uniforms, badges, official titles, or county-owned facilities, or personal phones, devices, or accounts used in connection with official authority, for campaign purposes in connection with the primary election or any subsequent election; (3) prohibiting the appointment of Unger as a deputy sheriff and the appointment of Deputy Josh Bennett to a management position, to the extent such appointments are the product of the corrupt "arrangement" alleged in the Complaint; and (4) requiring that complaints regarding misconduct by the Stanton County Sheriff's Office received during the pendency of this lawsuit be referred to the Nebraska Attorney General's Office or an independent authority for investigation.

In deciding a motion for injunctive relief, the court considers (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction would inflict on other interested parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.dd 109, 114 (8th Cir. 1981)). Because a preliminary injunction is an extraordinary remedy, the movant bears the burden of establishing its propriety under these factors. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). "No single factor is determinative." *WWP, Inc. v. Wounded*

3

*Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). Having considered these factors, Plaintiff's request for a preliminary injunction will be denied.

### 1. Retaliation

"Criticism of public officials lies at the very core of speech protected by the First Amendment." *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002) (quotation omitted). Thus, "[r]etaliation by a government actor in response to such an exercise of First Amendment rights forms a basis for § 1983 liability." *Id*. To establish a claim for retaliation under § 1983, a plaintiff must show he "was engaged in constitutionally protected activity, that [the government official's] adverse action caused [him] to suffer an injury which would 'chill a person of ordinary firmness from continuing. . . in that activity,' and that the adverse action was motivated in part by . . . exercise of [his] constitutional rights." *Carroll v. Pfeffer,* 262 F.3d 847, 850 (8th Cir. 2001) (quoting *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir. 1998)). "The 'chilling' effect of exercising a First Amendment right must be objectively reasonable." *Zanders v. Swanson,* 573 F.3d 591, 594 (8th Cir. 2009).

Plaintiff does not contend that he has been personally retaliated against for exercising his First Amendment rights. Rather, Plaintiff points to an alleged "pattern" of retaliatory conduct directed at other citizens and argues he has not exercised his First Amendment rights out of fear of this type of retaliation. As part of this pattern, Plaintiff's Complaint references the press release that allegedly targeted the Farmer who told Kleensang he did not intend to vote for him, as well as the February 2022 phone call to Reed's employer. Plaintiff has also submitted affidavits from several individuals pertaining to incidents involving Unger and the Sheriff's office that occurred between 2017 and 2019, and one incident from 2023. (Filing No. 19.) Plaintiff asserts that he wants to publicly oppose Kleensang's candidacy, post his views on social media, speak at forums, contact the Stanton County Board of Supervisors about the misconduct, and encourage other citizens to demand accountability, but has been deterred from doing so out of fear of being subjected to this pattern of retaliation.

Although Plaintiff is seeking to preclude a *future* adverse action upon him, the Supreme Court has stated that a "party need not always wait for the government to take coercive action against it before filing suit to challenge the government's conduct." *First Choice Women's Res.*

4

*Ctrs., Inc. v. Davenport*, No. 24-781, at \*5, 2026 WL 1153029 (Apr. 29, 2026). A "litigant may bring a pre-enforcement suit seeking prospective relief against government officials so long as it faces a *credible threat of enforcement*." *Id*. (emphasis added). *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur") (quotation omitted). The problem for Plaintiff, however, is that there is no indication whatsoever that he faces a credible threat of retaliation, or one that would chill a person of ordinary firmness from speaking out. Accordingly, Plaintiff has not shown he has a likelihood of success in prevailing on his retaliation claim.

Plaintiff contends that Unger's comments in the press release, as well as statements he made to the press following the filing of this lawsuit, are evidence that Unger has previously retaliated—and will continue to retaliate—if Plaintiff voices his opposition to Kleensang's candidacy or Stanton County law enforcement practices or misconduct. This is a stretch, to say the least. First, as to the press release, Unger's comment that Stanton County law enforcement would "continue to do our sworn job as long as I'm the Sheriff" is not a threat. Unger is clearly responding to criticism of his law enforcement strategies—not threatening citizens who oppose his viewpoints or practices. Second, as to the other statements Unger made to the press, these are likewise not threats or admissions to retaliatory acts. It is true that in an article published by the Norfolk Daily News—in reference to the press release in which his policing practices were questioned—Unger is quoted as saying: "It's political, because that person that made that statement to a deputy supports another candidate openly." (Filing No. 3-2.) Then, in another article, Unger described this lawsuit as a "politically-motivated smear campaign against Kleensang." (Filing No. 3-2.). However, when these articles are read in their entirety, it is apparent that Unger's statements are meant to convey his ultimate opinion that this lawsuit is a "sham."[1] (Filing No. 3-2.) Unger did not express any intent to retaliate, nor did he admit that he previously did so.

---

[1] Interestingly, this article includes a statement by Plaintiff's counsel, Paul Heimann, characterizing this lawsuit as one about "doing the right thing." (Filing No. 3-2.) The article notes that Unger accused Paul Heimann of four crimes after an alleged incident at a Stanton County lake in May, 2025, but the county attorney declined to pursue charges. (Filing No. 3-2.) In the article, Paul Heimann denied that this suit is motivated by that incident. (Filing No. 3-2.) However, the relationship between the individuals involved in this suit is curious, to say the least.

5

The affidavits Plaintiff submitted in connection with his request for a preliminary injunction do no better. They primarily consist of disagreements with the Stanton County Sheriff's policing practices—such as a complaint about an arrest following a traffic stop and issuances of press releases following events involving the Sheriff's Office—and tend to be speculative in nature.

Plaintiff also argues Unger's pattern of retaliatory behavior and plan to retaliate are evidenced by Unger's general awareness of which organizations and citizens support which candidates for office. However, having an awareness of who supports which candidate for office is not evidence of surveillance for purposes of effectuating retaliation. This knowledge is typically something that comes naturally as part of the campaign process, often (but not always) through public endorsements. It is frankly ridiculous to suggest that Unger's general awareness of this information is evidence of a retaliatory plan or pattern. Suffice it to say, Plaintiff's assertion that he will be retaliated against if he exercises his First Amendment rights is entirely conjectural. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.").

Moreover, the "pattern" of retaliatory behavior in which Defendants have allegedly engaged is not sufficiently egregious to chill a person of ordinary firmness from supporting another candidate for office, opposing the practices of the Stanton County Sheriff's Office, doing any of the things Plaintiff now claims he wants to do, or otherwise exercising free speech rights. "[I]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Naucke*, 284 F.3d at 928 (quotation omitted). Indeed, despite Plaintiff's alleged deterrence from—for example—making social media posts for fear of retaliation, he has still managed to file a newsworthy federal lawsuit in the face of those same fears. (Filing No. 3-2.) Because Defendant has not demonstrated a likelihood of success on the merits of his First Amendment claim, his request for a preliminary injunction will be denied.[2]

---

[2] Likelihood of success on the merits is the most significant factor in the determination of whether a preliminary injunction should be issued. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). To succeed on this factor, the movant "need only show a reasonable probability of success, that is, a fair chance of prevailing."

### 2. Use of Public Resources

Plaintiff argues injunctive relief is warranted because Defendants have converted public resources and illegally expended public funds in violation of Neb. Rev. Stat. §§ 49-14,101.02(2) and (9) of the Nebraska Political Accountability and Disclosure Act ("NPADA").[3]  The NPADA bars government officials from using or authorizing the use of public resources for campaign purposes.  Neb. Rev. Stat. § 49-14,101.02. Although NPADA provides a private right of action for Nebraska citizens, it requires that citizens exhaust administrative remedies before instituting a lawsuit by filing a complaint with the Nebraska Accountability and Disclosure Commission.  *See* Neb. Rev. Stat. § 49-14,127; Neb. Rev. Stat. 49-14,124; Neb. Rev. Stat. § 49-14,123.  Plaintiff has not shown that he has exhausted his administrative remedies and, therefore, has not demonstrated a likelihood of success on this claim.

### 3. Irreparable Harm

As to all the causes of action alleged in Plaintiff's Complaint, there is no indication Plaintiff will sustain irreparable harm if a preliminary injunction is not entered. "[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809

---

*Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).  The Court has considered each of the preliminary injunction factors set out above, but will not address them all here, as no one factor is dispositive.  The Court will note, however, that it is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Nevertheless, because the Court has concluded that Plaintiff is unlikely to succeed on the merits of his First Amendment claim, he has not shown a threat of irreparable harm that necessitates preliminary injunctive relief.  *See Powell v. Noble*, 798 F.3d 690 (8th Cir. 2018).

[3] Plaintiff alleges Defendants misused resources by (1) using the interior of the Sheriff's Office as the backdrop for the campaign endorsement photograph, (2) using the official Sheriff's badge as the central visual element of a campaign endorsement graphic, (3) filming a campaign video in front of the Stanton County Courthouse, (4) using a podium or lectern bearing the official Sheriff's seal at a campaign town hall, (5) posting social media content during compensated work hours, and (6) using the official press release infrastructure to retaliate against political opponents. (Filing No. 1.) The Court seriously questions whether any of these actions violated the NPADA. The evidence indicates that the photograph of Kleensang was an old picture taken when he was promoted and was not taken for campaign purposes.  Also, the Nebraska Supreme Court has indicated that the use of "props" in campaign videos, such as an office, desk or computer, does not violate the NPADA. *Vokal v. Nebraska Accountability and Disclosure Commission*, 276 Neb 988, 759 N.W.2d 75 (2009).  Further, Kleensang submitted an affidavit stating that he was not on duty when he posted social media content.  (Filing No. 18-2.)  Finally, as explained above, the press release was not retaliatory in nature.

F.3d 1033, 1040 (8th Cir. 2016) (quotation omitted). The mere "possibility of irreparable harm" will not suffice. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

There is no evidence that Plaintiff (or another citizen) will be targeted or retaliated against for expressing a political opinion. There is also no indication that Defendants plan to use official authority, resources, uniforms, badges, official titles, or county-owned facilities, or personal phones, devices, or accounts used in connection with official authority, for campaign purposes in the future. If these things do happen, Plaintiff can lodge a complaint with the NPADA. Further, the record does not support the existence of a corrupt "arrangement" between Unger and Kleensang, where Kleensang—if elected—would appoint Unger as a deputy. In the Norfolk Daily News article that Plaintiff submitted to the Court, Unger expressed that he has "every intention of finishing [his] term and leaving Stanton County at the first opportunity [he] get[s]." (Filing No. 3-2.) He indicated he has "no interest or desire or intention of working for the Stanton County Sheriff's Office after [he is] done." (Filing No. 3-2.) Unger expressed the same sentiment in an affidavit submitted to the Court in connection with Plaintiff's request for a preliminary injunction. (Filing No. 18-1.) Plaintiff's fears about consummation of a corrupt "arrangement" between the defendants are unfounded. In short, there is no basis to award Plaintiff the injunctive relief he seeks at this time.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for a Preliminary Injunction (Filing No. 3) is denied.

2. Plaintiff's Motion for Evidentiary Hearing (Filing No. 15) is denied.

Dated this 8th day of May, 2026.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge

8